*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellant,

v

JUAN T. WALKER,

Defendant-Appellee.

FOR PUBLICATION
May 23, 2019
9:10 a.m.

No. 332491
Wayne Circuit Court
LC No. 01-003031-FC

ON REMAND

Before: CAVANAGH, P.J., and BORRELLO and CAMERON, JJ.

CAMERON, J.

On remand, our Supreme Court has directed this Court to consider whether the decision in *Lafler v Cooper*, 566 US 156; 132 S Ct 1376; 182 L Ed 2d 398 (2012), should be applied retroactively to allow defendant to successfully assert that his trial counsel provided ineffective assistance of counsel in the plea bargaining context by failing to notify defendant of a plea offer before trial. We hold that *Lafler* applies retroactively because the case does not announce a new rule. Therefore, applying the *Lafler* decision here, we affirm the trial court's order granting relief to defendant.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 2001, a jury convicted defendant of first-degree premeditated murder, MCL 750.316, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. Defendant was originally sentenced to life imprisonment without parole for the first-degree premeditated murder conviction to be served consecutive to two years' imprisonment for the felony-firearm conviction. This Court affirmed defendant's convictions and sentences on direct review. *People v Walker*, unpublished per curiam opinion of the Court of Appeals, issued March 1, 2005 (Docket No. 239711) (*Walker I*).

-1-

In 2011, defendant moved for relief from judgment in the trial court on the ground that his trial counsel was ineffective for not informing defendant of the prosecutor's pretrial plea offer to second-degree murder and felony-firearm, with a sentence agreement of 25 to 50 years' imprisonment for second-degree murder and two years' imprisonment for felony-firearm. The trial court denied defendant's motion for relief from judgment. Defendant filed a delayed application for leave to appeal, which this Court denied "for failure to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v Walker*, unpublished order of the Court of Appeals, entered May 21, 2012 (Docket No. 307480). Defendant sought leave to appeal this Court's order in the Michigan Supreme Court, which held defendant's application in abeyance pending the decision in *Burt v Titlow*, 571 US 12; 134 S Ct 10; 187 L Ed 2d 348 (2013). *People v Walker*, 829 NW2d 217 (Mich, 2013). After *Burt* was decided, our Supreme Court remanded the instant case to the trial court for a *Ginther*[1] hearing, with these instructions:

> . . . we REMAND this case to the Wayne Circuit Court for an evidentiary hearing, pursuant to [*Ginther*], as to the defendant's contention that his trial counsel was ineffective for failing to inform him of the prosecutor's September 26, 2001 offer of a plea bargain to second-degree murder and a sentence agreement of 25 to 50 years. See *Missouri v Frye*, 566 US 134; 132 S Ct 1399; 182 L Ed 2d 379 (2012). To prevail on a claim of ineffective assistance of counsel, a defendant must show: (1) that his attorney's performance was objectively unreasonable in light of prevailing professional norms; and (2) that he was prejudiced by the deficient performance. *People v Carbin*, 463 Mich 590, 599-600; 623 NW2d 884 (2001). In order to establish the prejudice prong of the inquiry under these circumstances, the defendant must show that: (1) he would have accepted the plea offer; (2) the prosecution would not have withdrawn the plea offer in light of intervening circumstances; (3) the trial court would have accepted the defendant's plea under the terms of the bargain; and (4) the defendant's conviction or sentence under the terms of the plea would have been less severe than the conviction or sentence that was actually imposed. *Lafler v Cooper*, 566 US 156, 164; 132 S Ct 1376; 182 L Ed 2d 398 (2012).

> If the defendant establishes that his trial counsel was ineffective in failing to convey the plea bargain as outlined above, the defendant shall be given the opportunity to establish his entitlement to relief pursuant to MCR 6.508(D). If the defendant successfully establishes his entitlement to relief pursuant to MCR 6.508(D), the trial court must determine whether the remedy articulated in *Lafler v Cooper* should be applied retroactively to this case, in which the defendant's conviction became final in October 2005. [*People v Walker*, 497 Mich 894, 894-895 (2014).]

On remand, the trial court held a *Ginther* hearing, after which the trial court entered an order holding that defendant was denied the effective assistance of counsel when his trial

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

attorney failed to inform defendant of the plea offer. The next step in the procedural history was recounted in this Court's October 12, 2017 opinion as follows:

> Defendant then filed another motion for relief from judgment in the trial court, as required by our Supreme Court's remand order, and the trial court granted that motion and ordered the prosecution to reoffer defendant the plea deal. Defendant then pleaded guilty and was resentenced to 25 to 50 years' imprisonment for second-degree murder and two years' imprisonment for felony-firearm. [*People v Walker*, unpublished per curiam opinion of the Court of Appeals, issued October 12, 2017 (Docket No. 332491) (*Walker II*), rev'd in part & remanded 919 NW2d 401 (Mich, 2018).]

In September 2016, this Court granted the prosecution's delayed application for leave to appeal, which challenged the trial court's order granting defendant's motion for relief from judgment. *People v Walker*, unpublished order of the Court of Appeals, entered September 9, 2016 (Docket No. 332491). In October 2017, this panel issued an opinion reversing the trial court's order and remanding the case for the reinstatement of defendant's original convictions and sentences. *Walker II*, unpub op at 1, 9. This Court agreed with the prosecutor's argument "that defendant was afforded the effective assistance of counsel because he was not prejudiced, i.e., he did not demonstrate that there was a reasonable probability that he would have accepted the plea offer had it been made known to him." *Id*. at 3.[2] With respect to the prejudice requirement, this Court was "left with a definite and firm conviction that the trial [court] made a mistake in its findings, failed to engage in a proper analysis under *Lafler*, and thereby abused its discretion when it granted defendant's motion for relief from judgment." *Id*. at 7. That is, "the trial court clearly erred in finding a reasonable probability defendant would have accepted the plea offer. Therefore, defendant did not satisfy his burden in proving ineffective assistance of counsel, and the trial court abused its discretion when it granted defendant's motion for relief from judgment." *Id*. at 9.

Our Supreme Court entered an order reversing in part this Court's decision and remanding the case to this Court for consideration of whether *Lafler* applies retroactively to this case; in particular, our Supreme Court's order stated as follows:

> On order of the Court, the application for leave to appeal the October 12, 2017 judgment of the Court of Appeals is considered and, pursuant to MCR 7.305(H)(1), in lieu of granting leave to appeal, we REVERSE that part of the judgment of the Court of Appeals holding that the trial court clearly erred in finding a reasonable probability that the defendant would have accepted the plea

---

[2] The prosecutor made only a cursory argument regarding the first prong of defendant's ineffective assistance claim, i.e., whether defense counsel's performance was deficient. This panel found no clear error in the trial court's finding that defense counsel had failed to inform defendant of the plea offer, and therefore, the trial court's determination that the deficient performance prong was satisfied was left undisturbed. *Walker II*, unpub op at 4 n 4.

offer, and we REMAND this case to that court for consideration of whether *Lafler v Cooper*, 566 US 156; 132 S Ct 1376; 182 L Ed 2d 398 (2012), should be applied retroactively to this case, in which the defendant's convictions became final in 2005.

> The Court of Appeals found clear error in the trial court's memorandum opinion and in its statements during oral argument at a subsequent hearing. However, in its review of the record, the Court of Appeals failed to recognize that, at the end of that hearing, the trial court quoted the applicable standard from *Lafler* and unequivocally found that there was a reasonable probability that the defendant would have accepted the plea offer. This finding – made by the trial judge who presided over the trial and the evidentiary hearing – is supported by the record, and we are not "left with a definite and firm conviction that the trial court made a mistake." *People v Armstrong*, 490 Mich 281, 289 (2011). [*People v Walker*, 919 NW2d 401, 401 (Mich, 2018) (*Walker III*).]

On remand, we must determine whether *Lafler* should apply retroactively to this case. If it does, then we must affirm the trial court's order finding that defendant was denied the effective assistance of counsel when his trial attorney failed to inform defendant of the plea offer.

## II. ANALYSIS

"The issue whether a United States Supreme Court decision applies retroactively presents a question of law that we review de novo. We review for an abuse of discretion the trial court's ultimate ruling on a motion for relief from a judgment." *People v Gomez*, 295 Mich App 411, 414; 820 NW2d 217 (2012) (citation omitted).

Our Supreme Court has recently explained:

> Ordinarily, judicial decisions are to be given complete retroactive effect. But judicial decisions which express new rules normally are not applied retroactively to other cases that have become final. New legal principles, even when applied retroactively, do not apply to cases already closed, because at some point, the rights of the parties should be considered frozen and a conviction final. Thus, as to those cases that have become final, the general rule allows only prospective application. [*People v Barnes*, 502 Mich 265, 268; 917 NW2d 577 (2018) (quotation marks, ellipsis, and citations omitted).]

In *Barnes*, 502 Mich at 269, our Supreme Court quoted from *Montgomery v Louisiana*, 577 US ___, ___; 136 S Ct 718, 728; 193 L Ed 2d 599 (2016), for the most recent explanation of the federal standard for retroactivity:

> Justice O'Connor's plurality opinion in *Teague v Lane*, 489 US 288[; 109 S Ct 1060; 103 L Ed 2d 334] (1989), set forth a framework for retroactivity in cases on federal collateral review. Under *Teague*, a new constitutional rule of criminal procedure does not apply, as a general matter, to convictions that were final when the new rule was announced. *Teague* recognized, however, two categories of

rules that are not subject to its general retroactivity bar. First, courts must give retroactive effect to new substantive rules of constitutional law. Substantive rules include rules forbidding criminal punishment of certain primary conduct, as well as rules prohibiting a certain category of punishment for a class of defendants because of their status or offense. Second, courts must give retroactive effect to new watershed rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding. [*Barnes*, 502 Mich at 269, quoting *Montgomery*, 577 US at ___; 136 S Ct at 728 (brackets in original; quotation marks, ellipsis, and citations omitted).]

In short, "*Teague* makes the retroactivity of [the United States Supreme Court's] criminal procedure decisions turn on whether they are novel." *Chaidez v United States*, 568 US 342, 347; 133 S Ct 1103; 185 L Ed 2d 149 (2013). Absent one of the two exceptions noted above, a new rule announced by the United States Supreme Court may not collaterally benefit a person whose convictions are already final. *Id.* "Only when [the United States Supreme Court] appl[ies] a settled rule may a person avail herself of the decision on collateral review." *Id.*

Therefore, the first question under *Teague* is whether a judicial decision establishes a new rule. *Barnes*, 502 Mich at 269, citing *People v Maxson*, 482 Mich 385, 388; 759 NW2d 817 (2008). A judicial decision's rule is considered to be new if "it breaks new ground or imposes a new obligation on the [s]tates or the [f]ederal [g]overnment." *Maxson*, 482 Mich at 388 (quotation marks and citation omitted); see also *Chaidez*, 568 US at 347. In other words, "a case announces a new rule if the result was not *dictated* by precedent existing at the time the defendant's conviction became final." *Chaidez*, 568 US at 347 (quotation marks and citation omitted). "And a holding is not so dictated . . . unless it would have been apparent to all reasonable jurists." *Id.* (quotation marks and citation omitted).

But a case does *not* announce a new rule if the case is merely applying a "principle that governed a prior decision to a different set of facts." *Id.* at 347-348 (quotation marks and citations omitted). "[W]hen all [the United States Supreme Court does] is apply a general standard to the kind of factual circumstances it was meant to address, [the Court] will rarely state a new rule for *Teague* purposes." *Id.* at 348. Therefore, "garden-variety applications of the test in [*Strickland*] for assessing claims of ineffective assistance of counsel do not produce new rules." *Id.* The *Strickland* standard "provides sufficient guidance for resolving virtually all claims of ineffective assistance, even though their particular circumstances will differ." *Id.* (quotation marks and citation omitted). The United States Supreme Court has therefore "granted relief under *Strickland* in diverse contexts without ever suggesting that doing so required a new rule." *Id.*

In *Chaidez*, 568 US at 344, the United States Supreme Court considered the retroactivity of its decision in *Padilla v Kentucky*, 559 US 356; 130 S Ct 1473; 176 L Ed 2d 284 (2010), in which the Supreme Court "held that the Sixth Amendment requires an attorney for a criminal defendant to provide advice about the risk of deportation arising from a guilty plea." The Supreme Court concluded in *Chaidez* that *Padilla* announced a new rule because the holding in *Padilla* was not "apparent to all reasonable jurists" before *Padilla* was decided. *Chaidez*, 568 US at 354 (quotation marks and citation omitted). Indeed, there had been no United States Supreme Court precedent before *Padilla* that dictated the rule that the *Strickland* test applied to a

defense counsel's failure to advise the defendant about non-criminal consequences of sentencings, like the possibility of deportation. *Id*. at 353. The Supreme Court stated in *Chaidez* that "*Padilla* would not have created a new rule had it only applied *Strickland*'s general standard to yet another factual situation—that is, had *Padilla* merely made clear that a lawyer who neglects to inform a client about the risk of deportation is professionally incompetent." *Id*. at 348-349. *Padilla* did more than this, however; it considered a "threshold question[]" about whether deportation advice fell within the scope of the Sixth Amendment right to counsel. *Id*. at 349. "In other words, prior to asking *how* the *Strickland* test applied ('Did this attorney act unreasonably?'), *Padilla* asked *whether* the *Strickland* test applied ('Should we even evaluate if this attorney acted unreasonably?')." *Id*. The Supreme Court's determination in *Padilla* that the *Strickland* test applied thus constituted a new rule. *Id*. at 349, 358. Therefore, under *Teague*, defendants whose convictions became final before *Padilla* was issued could not benefit from the holding in *Padilla*. *Id*. at 358.

Our Supreme Court has directed this Court to consider whether *Lafler*'s holding applies retroactively. In doing so, this Court must consider, under the federal retroactivity jurisprudence summarized earlier, whether *Lafler* created a new rule of constitutional law.

In *Lafler*, the defendant rejected a plea offer on the advice of his attorney. *Lafler*, 566 US at 160. After the plea offer was rejected, the defendant had a full and fair jury trial that resulted in a guilty verdict, and the defendant received a harsher sentence than what was offered in the rejected plea bargain. *Id*. The parties agreed in *Lafler* that the defense counsel's performance was deficient when he advised the defendant to reject the plea offer. *Id*. at 163. The Supreme Court noted in *Lafler* that the Court had held in *Hill v Lockhart*, 474 US 52; 106 S Ct 366; 88 L Ed 2d 203 (1985), that the *Strickland* test applied "to challenges to guilty pleas based on ineffective assistance of counsel." *Lafler*, 566 US at 163, quoting *Hill*, 474 US at 58. The Supreme Court stated that "[t]he question for this Court is *how* to apply *Strickland*'s prejudice test where ineffective assistance results in a rejection of the plea offer and the defendant is convicted at the ensuing trial." *Lafler*, 566 US at 163 (emphasis added). The Supreme Court quoted from *Strickland*'s prejudice test and then noted that, while *Hill* involved a "claim that ineffective assistance led to the improvident acceptance of a guilty plea," in *Lafler*, "the ineffective advice led not to an offer's acceptance but to its rejection." *Id*. The Supreme Court then explained how the *Strickland* prejudice test was to be applied to the circumstances in *Lafler*:

> In these circumstances a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed. Here, the Court of Appeals for the Sixth Circuit agreed with that test for *Strickland* prejudice in the context of a rejected plea bargain. This is consistent with the test adopted and applied by other appellate courts without demonstrated difficulties or systemic disruptions. [*Id*. at 164.]

The Supreme Court in *Lafler* rejected arguments that "there can be no finding of *Strickland* prejudice arising from plea bargaining if the defendant is later convicted at a fair trial." *Id*. "The Sixth Amendment requires effective assistance of counsel at critical stages of a criminal proceeding[,]" including pretrial critical stages of the criminal proceeding. *Id*. at 165. Moreover, the Supreme Court stated that it had "not followed a rigid rule that an otherwise fair trial remedies errors not occurring at the trial itself. It has inquired instead whether the trial cured the particular error at issue." *Id*. In *Lafler*, the trial did not cure the error but "caused the injury from the error." *Id*. at 166. "Even if the trial itself is free from constitutional flaw, the defendant who goes to trial instead of taking a more favorable plea may be prejudiced from either a conviction on more serious counts or the imposition of a more severe sentence." *Id*.

The Supreme Court in *Lafler* also rejected an argument that providing a remedy for the type of error that occurred in *Lafler* would "open the floodgates to litigation by defendants seeking to unsettle their convictions." *Id*. at 172. The Supreme Court noted that "[c]ourts have recognized claims of this sort for over 30 years, and yet there is no indication that the system is overwhelmed by these types of suits or that defendants are receiving windfalls as a result of strategically timed *Strickland* claims." *Id*. (citation omitted).

In applying its holding in *Lafler* to the facts of that case, the Supreme Court noted that the defendant was bringing "a federal collateral challenge to a state-court conviction." *Id*. at 172.

> Under [the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)], a federal court may not grant a petition for a writ of habeas corpus unless the state court's adjudication on the merits was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 USC 2254(d)(1). A decision is contrary to clearly established law if the state court applies a rule that contradicts the governing law set forth in Supreme Court cases. [*Lafler*, 566 US at 172-173 (quotation marks, brackets, and citation omitted).]

The Supreme Court concluded in *Lafler* that AEDPA did not present a bar to granting relief in that case because the state appellate court had failed to apply *Strickland* when assessing the defendant's ineffective assistance of counsel claim. *Id*. at 173. "By failing to apply *Strickland* to assess the ineffective-assistance-of-counsel claim [the defendant] raised, the state court's adjudication was contrary to clearly established federal law." *Id*. The defendant satisfied the *Strickland* test, and the parties had conceded the existence of deficient performance. *Id*. at 174.

> As to prejudice, [the defendant] has shown that but for counsel's deficient performance there is a reasonable probability he and the trial court would have accepted the guilty plea. In addition, as a result of not accepting the plea and being convicted at trial, [the defendant] received a minimum sentence 3½ times greater than he would have received under the plea. The standard for ineffective assistance under *Strickland* has thus been satisfied. [*Id*. (citation omitted).]

As a remedy, the Supreme Court ordered the prosecutor to reoffer the plea agreement to the defendant, and if the defendant accepted the plea offer, the state trial court was to "exercise its discretion in determining whether to vacate the convictions and resentence [the defendant]

pursuant to the plea agreement, to vacate only some of the convictions and resentence [the defendant] accordingly, or to leave the convictions and sentence from trial undisturbed." *Id*.

In a dissenting opinion in *Lafler*, Justice Scalia opined that "the Court today opens a whole new field of constitutionalized criminal procedure: plea-bargaining law." *Id*. at 175 (SCALIA, J., dissenting). Justice Scalia explained:

> [The defendant] received a full and fair trial, was found guilty of all charges by a unanimous jury, and was given the sentence that the law prescribed. The Court nonetheless concludes that [the defendant] is entitled to some sort of habeas corpus relief (perhaps) because his attorney's allegedly incompetent advice regarding a plea offer *caused* him to receive a full and fair trial. That conclusion is foreclosed by our precedents. Even if it were not foreclosed, the constitutional right to effective plea-bargainers that it establishes is at least a new rule of law, which does not undermine the [state appellate court's] decision and therefore cannot serve as the basis for habeas relief. And the remedy the Court announces – namely, whatever the state trial court in its discretion prescribes, down to and including no remedy at all – is unheard-of and quite absurd for violation of a constitutional right. I respectfully dissent. [*Id*. at 176.]

Justice Scalia found it "apparent from *Strickland* that bad plea bargaining has nothing to do with ineffective assistance of counsel in the constitutional sense." *Id*. at 177.

> Because the right to effective assistance has as its purpose the assurance of a fair trial, the right is not infringed unless counsel's mistakes call into question the basic justice of a defendant's conviction or sentence. That has been, until today, entirely clear. A defendant must show that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Impairment of fair trial is how we distinguish between unfortunate attorney error and error of constitutional significance. [*Id*. at 178 (citations omitted).]

Justice Scalia further opined that AEDPA barred granting relief given the "[n]ovelty" of the holding in *Lafler*. *Id*. at 181. Because the Supreme Court had never held that *Strickland* prejudice could be established in the circumstances presented in *Lafler*, Justice Scalia stated that the Supreme Court violated AEDPA in granting habeas relief. *Id*. at 183. The portion of Justice Scalia's dissent summarized above was joined by Chief Justice Roberts and Justice Thomas. See *id*. at 175. Justice Alito wrote a separate dissent in which he expressed agreement with this analysis of Justice Scalia. See *id*. at 187 (ALITO, J., dissenting).[3]

---

[3] To be sure, Justice Scalia's dissent in *Lafler* suggested that the holding in *Lafler* created a new rule. See *Lafler*, 566 US at 176-178, 183 (SCALIA, J., dissenting). But the majority in *Lafler* did not share this view, given the majority's analysis and conclusion that AEDPA did not bar granting relief. Although dissenting opinions may be considered in assessing whether a case created a new rule, see *Chaidez*, 568 US at 354 n 11, "[d]issents have been known to exaggerate

Neither the United States Supreme Court nor the Michigan appellate courts have addressed whether *Lafler* applies retroactively. See *People v Hobson*, 500 Mich 1005, 1006 (2017) (MARKMAN, C.J., concurring) ("This Court has not specifically assessed the retroactivity of [*Lafler*]."). In their supplemental briefs on remand, the parties have brought to this Court's attention the opinions of lower federal courts as well as a Utah Supreme Court opinion. "While the decisions of lower federal courts and other state courts are not binding on this Court, they may be considered as persuasive authority." *People v Woodard*, 321 Mich App 377, 385 n 2; 909 NW2d 299 (2017).

The lower federal courts have concluded that *Lafler* did not create a new rule of constitutional law. See *In re Liddell*, 722 F3d 737, 738 (CA 6, 2013) (citing cases in support of the proposition that every federal circuit to consider the issue has concluded that *Lafler* did not create a new rule of constitutional law). Of particular note is the analysis in *In re Perez*, 682 F3d 930, 932-933 (CA 11, 2012), concluding that *Lafler* and its companion case, *Frye*, did not announce new rules. The *Perez* court noted that "the Supreme Court's language in *Lafler* and *Frye* confirm[s] that the cases are merely an application of the Sixth Amendment right to counsel, as defined in *Strickland*, to a specific factual context." *Id.* at 932. "The Court has long recognized that *Strickland*'s two-part standard applies to 'ineffective assistance of counsel claims arising out of the plea process.'" *Id.*, citing *Hill*, 474 US at 57.

> The Court has also said that *Strickland* itself clearly establishes Supreme Court precedent for evaluating ineffective assistance of counsel claims under AEDPA. Because we cannot say that either *Lafler* or *Frye* breaks new ground or imposes a new obligation on the State or Federal Government, they did not announce new rules. Put another way, *Lafler* and *Frye* are not new rules because they were dictated by *Strickland*. [*Perez*, 682 F3d at 932-933 (quotation marks and citations omitted).]

Further, the *Perez* court concluded that

> any doubt as to whether *Frye* and *Lafler* announced new rules is eliminated because the Court decided these cases in the post conviction [sic] context. Indeed, in *Lafler*, the Supreme Court held that the state court's decision was "contrary to clearly established [federal] law" under AEDPA. To be "clearly established federal law" within the meaning of AEDPA, the rule applied in *Lafler* must, by definition, have been an old rule within the meaning of *Teague*. . . . [T]he [Supreme] Court rarely, if ever, announces and retroactively applies new rules of constitutional criminal procedure in the postconviction context. Given the general policy of not announcing or applying new rules of constitutional law

---

the novelty of majority opinions; and the mere existence of a dissent, like the existence of conflicting authority in state or lower federal courts, does not establish that a rule is new[,]" *id*.

in habeas proceedings reflected in *Teague* and AEDPA, it stands to reason that the holdings in *Frye* and *Lafler* do not constitute new rules of constitutional law. [*Id*. at 933-934 (citations omitted).]

Other lower federal court opinions likewise reason that *Lafler* did not create a new rule. See, e.g., *Gallagher v United States*, 711 F3d 315, 315-316 (CA 2, 2013) ("Neither *Lafler* nor *Frye* announced a new rule of constitutional law: Both are applications of [*Strickland*].") (quotation marks omitted); *Williams v United States*, 705 F3d 293, 294 (CA 8, 2013) ("We . . . conclude, as have the other circuit courts of appeals that have addressed the issue, that neither [*Lafler*] nor *Frye* announced a new rule of constitutional law."); *Buenrostro v United States*, 697 F3d 1137, 1140 (CA 9, 2012) ("[N]either *Frye* nor *Lafler* . . .decided a new rule of constitutional law. The Supreme Court in both cases merely applied the Sixth Amendment right to effective assistance of counsel according to the test articulated in [*Strickland*] and established in the plea-bargaining context in [*Hill*]."); *In re King*, 697 F3d 1189, 1189 (CA 5, 2012) ("[W]e agree with the Eleventh Circuit's determination in [*Perez*] that [*Lafler*] and *Frye* did not announce new rules of constitutional law because they merely applied the Sixth Amendment right to counsel to a specific factual context."); but see *Berry v United States*, 884 F Supp 2d 453, 462 (ED Va, 2012), app dis 490 F Appx 583 (CA 4, 2012) ("Although *Hill* and its progeny provided some foundation for the Court's decisions in *Lafler* and *Frye*, it did not *dictate* the result in these cases, nor did it foreclose all possibility of an alternative decision.").

Contrary to the overwhelming view of the lower federal courts, the Utah Supreme Court has concluded that "*Lafler* and *Frye* announced a new rule[.]" *Winward v Utah*, 355 P3d 1022, 1023; 2015 UT 61 (2015). The Utah Supreme Court acknowledged that its conclusion was "in tension with the federal circuit courts' unanimous determination that *Lafler* and *Frye* did not announce a 'new rule[.]' " *Id*. at 1026 n 3 (citing cases). The Utah Supreme Court explained its reasoning as follows:

> The key holding of *Lafler* and *Frye* is that a defendant who has been convicted as the result of a fair trial or voluntary plea, and sentenced through a constitutionally immaculate sentencing process, can claim to have been prejudiced by his counsel's ineffectiveness during plea bargaining. And this key holding is simply not to be found in the Supreme Court's prior case law – not explicitly, and not by clear implication. [*Id*. at 1027.]

In other words, "[t]he holding of *Lafler* – that prejudice is possible even if a defendant has received a fair trial – decides an issue neither contemplated nor addressed by *Strickland*." *Id*. at 1028. Also, before *Lafler*, the United States Supreme Court's cases expanding on the *Strickland* prejudice test "did not dictate the result in *Lafler* and *Frye*." *Id*. For example, although the Supreme Court's opinion in *Hill* "established that prejudice exists where a defendant accepts a plea bargain because of ineffective assistance, and thus waives his right to trial[,]" *id*., the *Hill* opinion "did not establish the converse: that prejudice exists when a defendant rejects a plea bargain because of ineffective assistance, thereby exercising his right to trial." *Id*. "In short," the Utah Supreme Court explained, "we cannot conclude that *Lafler* and *Frye* merely applied the principles of old cases to new facts, as the 'dictated by precedent' standard requires." *Id*.

We find the analyses of the lower federal courts, such as in *Perez*, more persuasive than that of the Utah Supreme Court in *Winward*. The *Lafler* opinion did not create a new rule—it merely determined *how* the *Strickland* test applied to the specific factual context concerning plea bargaining. Unlike in *Padilla*, there was no threshold question in *Lafler* concerning *whether* the *Strickland* test applied. The Supreme Court's analysis in *Lafler* indicated that the "rule" being applied was the test for ineffective assistance of counsel set forth in *Strickland* and applied to the plea process in *Hill*. Although *Lafler* was the first case in which the Supreme Court applied the *Strickland* prejudice test to the specific factual context presented in *Lafler*, i.e., where a defendant rejected a plea offer due to ineffective assistance of counsel and then received a fair trial, this does not change the fact that the same rule set forth in *Strickland* was being applied to a new factual context in *Lafler*. The application of the *Strickland* test in *Lafler* therefore did not produce a new rule of constitutional law. See *Chaidez*, 568 US at 348.

This conclusion is reinforced by the fact that the defendant in *Lafler* was seeking federal collateral review of a state-court conviction. By concluding that AEDPA did not bar granting relief to the defendant, the Supreme Court made clear that *Strickland* was the "clearly established [f]ederal law," *Lafler*, 566 US at 172-173, citing 28 USC 2254(d)(1), that was being applied in *Lafler*. " '[C]learly established' law is not 'new' within the meaning of *Teague*." *Chaidez*, 568 US at 349 n 4. Therefore, because the Supreme Court in *Lafler* held that AEDPA did not bar granting relief to the defendant in that case, *Lafler*, 566 US at 173, it follows that the Supreme Court was applying "clearly established [f]ederal law," i.e., the Sixth Amendment right to counsel as defined in *Strickland*, and such clearly established federal law does not constitute a new rule of constitutional law, *Chaidez*, 568 US at 349 n 4; see also *Perez*, 682 F3d at 933-934.[4]

---

[4] In *Winward*, 355 P3d at 1027 n 5, the Utah Supreme Court stated that,

> contrary to *Perez*, the *Lafler* Court did not hold that the state court had acted contrary to clearly established law by applying *Strickland* in a manner that failed to anticipate the outcome of *Lafler* and *Frye*. Instead, the *Lafler* Court concluded that the state court had failed to apply *Strickland* at all. It was this failure, not the failure to anticipate *Lafler* and *Frye*, that was contrary to clearly established law and therefore allowed the Court to grant habeas relief. [Citation omitted.]

The Utah Supreme Court's analysis on this point is unconvincing. It is *Strickland* itself that the state appellate court failed to apply in *Lafler*; this is what led the United States Supreme Court in *Lafler* to conclude that the state appellate court had failed to apply "clearly established federal law." By concluding that AEDPA did not present a bar to granting habeas relief, the Court in *Lafler* concluded that the law being applied was "clearly established," and thus a new rule was not created. See *Lafler*, 566 US at 173 ("By failing to apply *Strickland* to assess the ineffective-assistance-of-counsel claim [the defendant] raised, the state court's adjudication was contrary to clearly established federal law.").

Accordingly, we conclude that *Lafler* did not create a new rule and that it therefore applies retroactively to this case. Thus, we affirm the trial court's order granting relief to defendant predicated on *Lafler*.

Affirmed.

/s/ Thomas C. Cameron
/s/ Mark J. Cavanagh
/s/ Stephen L. Borrello